UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LARRY H. JOEL,                                                                    PLAINTIFF AND
COUNTERCLAIM DEFENDANT

v.                                            CIVIL ACTION NO. 3:07-CV-10

UNITED STATES OF AMERICA                          DEFENDANT AND
COUNTERCLAIM PLAINTIFF

## MEMORANDUM OPINION

This matter is before the court on motion of the government for summary judgment (DN 18). Plaintiff, Larry H. Joel ("Joel"), filed this action to recover federal taxes paid pursuant to a penalty assessed against him by the Internal Revenue Service under 26 U.S.C. § 6672. The government counterclaimed for the total balance of the tax penalty. For the reasons stated below, the government is entitled to summary judgment.

## BACKGROUND

In 1984, Joel, a certified Doctor of Optometry, and a group of investors purchased Duling Optical, a chain of retail optometry stores, for $3 million. Upon acquisition, Duling Optical became D&K Optical, Inc. ("D&K"). D&K then acquired Monfried Optical, Inc. ("Monfried"), another chain of retail optometry stores. Joel was the majority stockholder of these companies with a 60% interest in each.

In addition to operating retail optometry stores, D&K and Monfried sold retail franchises to individuals. D&K and Monfried financed those franchises and sold the notes they obtained from the individual franchisees to Duling Finance Corporation ("Duling Finance"), an entity formed by Joel to hold the notes. Over the course of the operation of D&K, Monfried, and Duling Finance, Norwest Bank

("Norwest") provided Duling Finance loans totaling $10 million. As collateral for the Norwest loans, Duling Finance pledged notes that it had purchased from D&K and Monfried.

Beginning in late 1994, D&K and Monfried began experiencing severe financial problems. Duling Finance was in default on its loan payments to Norwest, and D&K and Monfried were behind on payments to their creditors, including the Internal Revenue Service.

In response to Duling Finance's default, Norwest exercised its right to require the D&K and Monfried franchisees to send their note payments to Norwest directly, rather than to Duling Finance, D&K, or Monfried. Norwest ultimately filed suit, seeking to foreclose its lien and take possession of the notes associated with the D&K and Monfried franchises. Following initiation of the suit, Joel convinced Norwest to forbear from exercising its right to foreclose for nearly a year. In exchange for Norwest's forbearance, Joel paid Norwest over $2 million, and pledged to Norwest the assets of D&K and Monfried, as well as his stock in these companies. During this time, Joel unsuccessfully attempted to sell D&K and Monfried for enough money to pay Norwest and the companies' creditors. In March 1996, with Duling Finance still in default on its loan payments, Norwest elected to consummate a private foreclosure and sale of D&K and Monfried's assets. On May 24, 1996, Sterling Optical, a third-party optical company, agreed to purchase these assets from Norwest.

At the time of Norwest's sale of D&K and Monfried's assets, D&K and Monfried had not paid their federal withholding taxes for nearly two years. During the fourth quarter of 1994, the four quarters of 1995, and the first and second quarters of 1996, D&K and Monfried failed to pay a total of $1,424,384.82 in withholding taxes.[1] While these withholding taxes were accruing, D&K and Monfried continued to pay their employees' wages and make payments to other creditors.

---

[1] D&K failed to pay $932,040.53 in withholding taxes while Monfried failed to pay $492,344.29.

In April 1997, pursuant to 26 U.S.C. § 6672, the government assessed a trust fund recovery penalty against Joel totaling $1,430,901.01.[2]  Certain payments and credits were applied to the outstanding assessments on Joel's behalf.  As of February 13, 2007, however, the government was still owed $1,275,140.57.

Joel filed this action seeking recovery of the payments he has made to date toward the penalty assessment and abatement of the outstanding amount.  The government counterclaimed for the balance of the unpaid assessment.  The government has moved for summary judgment as to Joel's claim and its counterclaim, and Joel has responded.  The motion is now ripe for review.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.*  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

---

[2]This amount includes the outstanding withholding taxes as well as assessed interest, fees, and collection costs of $6,516.19.

The Internal Revenue Code "requires most employers to withhold Social Security, Medicare, and federal income taxes from their employees' wages." *Bell v. United States*, 355 F.3d 387, 392 (6th Cir. 2004) (citing 26 U.S.C. §§ 3102, 3402). These withholding taxes "are part of the wages of the employee, held by the employer in trust for the government; the employer, as a function of administrative convenience, extracts money from a worker's paycheck and briefly holds that money before forwarding it to the IRS." *Id.* (citing *Gephart v. United States*, 818 F.2d 469, 472 (6th Cir. 1987)). Congress created a penalty for those who fail to remit these withheld "trust fund taxes" to the government. *Id.* Under 26 U.S.C. § 6672 any person who is required to collect the taxes and willfully fails to pay them over to the government is personally liable for 100% of the delinquent taxes. *Id.*[3]

In order for an individual to be liable under § 6672, the individual must: (1) be a person responsible for paying the taxes; and (2) have willfully failed to pay the tax money to the government. *Id.*; *Kinnie v. United States,* 994 F.2d 279, 283 (6th Cir. 1993). Because a tax penalty assessment is presumptively valid, the individual assessed with the penalty bears the burden of proving by a preponderance of the evidence either that he is not a responsible person, or that the failure to pay over withholding taxes was not willful. *Collins v. United States*, 848 F.2d 740, 742 (6th Cir. 1988). The court does not find that Joel has presented evidence sufficient to establish a genuine issue of material fact as to his status as a responsible person or his willfulness.

---

[3] Section 6672(a) provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

The Sixth Circuit has identified five factors which are indicia of whether an individual is a "responsible person." They are: (1) the duties of the individual; (2) whether the individual had check-signing authority; (3) whether the individual is an officer, director, or shareholder of the corporation; (4) whether the individual has the ability to hire and fire employees; and (5) the extent to which the individual, along with others, controls the finances of the company. *See Kinnie,* 994 F.2d at 283. The test applied to determine whether an individual is a responsible person is a functional one, and depends upon the degree of influence and control an individual does, or is authorized to, exercise over the financial affairs of the corporation, particularly the decision to disburse funds and make payment to creditors. *Gephart*, 818 F.2d at 473. "It is not necessary that an individual have the final word as to which creditors should be paid in order to be subject to liability... [r]ather, it is sufficient that the person have significant control over the disbursement of funds." *Id.* at 474.

Joel argues that although there is evidence indicating that he is a responsible person, that evidence is ambiguous and inconclusive. The court disagrees. Joel does not dispute that he was the "prime economic motivator" of D&K and Monfried, and that he was the majority shareholder of the companies. Joel, however, contends that he was not an officer of D&K or Monfried, and was not involved in the day to day operations of the companies during the period of time when the withholding taxes were accruing.[4] Joel testified that although he maintained an office at D&K and Monfried during this period of time, after the companies began experiencing financial difficulties, he began to focus his professional efforts elsewhere. According to Joel, most of the companies' officers left during this time and Apryl Robinson ("Robinson"), D&K and Monfried's secretary/administrative assistant, ran the day

---

[4] In his deposition, Joel testified that neither D&K or Monfried had a board of directors and that he was not an officer of either company.

- 5 -

to day operations of the companies.[5] Joel contends that Robinson determined which creditors would be paid and was the person responsible for collecting and paying the withholding taxes owed by D&K and Monfried.

Even assuming Robinson was responsible for paying D&K and Monfried's withholding taxes, more than one person can be a "responsible person" in a corporation. *Gephart*, 818 F.2d at 473. When D&K and Monfried began facing financial difficulties in 1994, Joel personally participated in negotiations with Norwest concerning the late note payments and made the decision to pledge the assets of the companies as collateral. Joel also made the decision to attempt to sell D&K and Monfried during this time in order to pay off the companies' creditors. Such action clearly indicates that Joel had authority over the expenditure of D&K and Monfried's funds. Moreover, Joel's signature was affixed to every D&K and Monfried check issued to the companies' creditors and employees.[6] Joel also signed the companies' employment tax returns for the period of time when the withholding taxes were not being paid. In considering the above factors, it is clear to the court that Joel was authorized to, and did in fact, exercise a significant degree of influence and control over the financial affairs of D&K and Monfried during the period of time at issue in this case. *See id.* at 474. Accordingly, the court finds that Joel was a person responsible for paying D&K and Monfried's withholding taxes.

A responsible person "willfully" fails to pay withholding taxes to the government when the person "makes a deliberate choice to voluntarily, consciously, and intentionally pay other creditors rather than make tax payments...." *Bell*, 355 F.3d at 393 (quoting *Collins*, 848 F.2d at 742). A responsible person who knows that withholding taxes have not been paid and allows the company to pay other

---

[5] Joel hired Robinson in 1990 to perform secretarial and administrative work for D&K and Monfried at a salary of $30,000. Robinson had no ownership interest in either company.

[6] Joel's signatures on D&K and Monfried's checks were often rubber stamped by Robinson. Joel testified, however, that Robinson had the authority to sign checks and other documents on his behalf.

creditors acts willfully. *See id.* "Any payment to other creditors, including the payment of net wages to the corporation's employees, with knowledge that the employment taxes are due and owing to the Government, constitutes a willful failure to pay taxes." *Greenberg v. United States*, 46 F.3d 239, 244 (3rd Cir.1994); *see also Collins*, 848 F.2d at 741-42 ("it is no excuse that, as a matter of sound business judgment, the money was paid... for wages in order to keep the corporation operating as a going concern - the government cannot be made an unwilling partner in a floundering business").

Joel contends that he first learned of D&K and Monfried's failure to pay withholding taxes on February 1, 1996. The government has produced payroll checks issued by D&K and Monfried after this date bearing Joel's signature. Although the payroll checks were stamped with Joel's signature, Joel does not dispute the fact that he authorized the use of his signature on such checks. Because Joel became aware of the unpaid withholding taxes on February 1, 1996, and allowed the wages of D&K and Monfried employees to be paid after this date, Joel's failure to pay the withholding taxes must be considered willful.

Having concluded that Joel is a responsible person who willfully failed to pay the withholding tax liabilities of D&K and Monfried, the court finds that Joel is personally liable under 26 U.S.C. § 6672 for the unpaid taxes. Accordingly, the government is entitled to summary judgment. A separate order will be entered herein this date in accordance with this opinion.